QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Thad A. Davis (Bar No. 220503)
    thaddavis@quinnemanuel.com
  Jennie L. Wang (Bar No. 233392)
    jenniewang@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff and
Counterdefendant FINANCE EXPRESS
LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| FINANCE EXPRESS LLC, a Nevada corporation, <br><br> Plaintiff, <br><br> v. <br><br> NOWCOM CORPORATION, a California corporation; RUFUS HANKEY, an individual; WESTLAKE SERVICES, INC. d/b/a Westlake Financial Services, a California corporation; HANKEY INVESTMENT COMPANY, L.P., a California limited partnership; DON R. HANKEY, an individual; HANKEY GROUP, an unincorporated association; and DOES 1 through 10, inclusive, <br><br> Defendants. <br><br> and related counterclaims. | CASE NO. SACV07-1225 CJC (ANx) <br><br> **PLAINTIFF FINANCE EXPRESS LLC'S FIRST AMENDED COMPLAINT FOR:** <br><br> **(1)  VIOLATION OF ANTICYBERSQUATTING CONSUMER PROTECTION ACT, 15 U.S.C. § 1125(d);** <br> **(2)  TRADEMARK AND TRADE NAME INFRINGEMENT UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a);** <br> **(3)  CONTRIBUTORY TRADEMARK AND TRADE NAME INFRINGEMENT UNDER SECTION 32(1) OF THE LANHAM ACT, 15 U.S.C. § 1114(1) AND SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a);** <br> **(4)  FALSE ADVERTISING UNDER SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a);** <br> **(5)  FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTION UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a);** |

**(6)  UNFAIR COMPETITION UNDER *CAL. BUS. & PROF. CODE* § 17200 *ET SEQ.* AND COMMON LAW;**

**(7)  FALSE ADVERTISING UNDER *CAL. BUS. & PROF. CODE* § 17500 *ET SEQ.*;**

**(8)  COMMON LAW TRADEMARK AND TRADE NAME INFRINGEMENT**

<u>JURY TRIAL DEMANDED</u>

Plaintiff FINANCE EXPRESS LLC ("Plaintiff" or "FINANCE EXPRESS") complains of Defendants, and each of them, as follows:

## NATURE OF THE ACTION

1.      This action seeks to enjoin Defendants' unlawful and unfair competition with Plaintiff FINANCE EXPRESS through infringing on Plaintiff's trademarks to falsely advertise a competing product.

2.       Plaintiff FINANCE EXPRESS brings this action for damages and preliminary and permanent injunctive relief for federal and common law trademark infringement, contributory trademark infringement, unfair competition and false advertising, false designation of origin, and false description arising out of the willfully infringing and unlawful activities of Defendants, which have caused irreparable harm to Plaintiff.

## JURISDICTION AND VENUE

3.      This action arises under the federal Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); the federal Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1051 *et seq.*, including more particularly 15 U.S.C. §§ 1114(1), 1125(a) and (c); and the California statutory and common law of unfair competition, false advertising, and trademark infringement. This Court has subject matter jurisdiction for action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (c), and principles of pendent jurisdiction.

4.       This Court has personal jurisdiction over Defendants as they may be found to do business in the state of California.  Plaintiff is informed and believes, and on that basis alleges, that Defendants have substantial, and not isolated, contacts with the State of California, including with respect to the infringing advertising sued upon in this action.  Defendants maintain their headquarters in the State of California and advertise, market, and sell its products within the State.  Jurisdiction in California is consistent with the requirements of federal due process.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred in the Central District of California.  Among other things, (a) false statements regarding Defendants' product are posted on the Internet and offered for distribution in this judicial district; (b) Defendants offer its products for sale in this judicial district to customers that are confused or likely to be confused by defendants' false and infringing use of Plaintiff's trademarks; and (c) Defendants undertook their infringing actions knowing that, and with the intention that, they would damage Plaintiff in this judicial district.  In addition, venue in this Court is proper pursuant to 28 U.S.C. § 1391(c), as Defendants are subject to personal jurisdiction in this judicial district.

## PARTIES

6.      At all times relevant herein, Plaintiff FINANCE EXPRESS is and was a corporation organized and existing under the laws of the state of Nevada, with its principal place of business in Orange County, California.

7.      Upon information and belief, at all times relevant herein, Defendant NOWCOM CORPORATION ("NOWCOM") is and was a corporation organized and existing under the laws of the state of California, with its principal place of business in Los Angeles, California.  Upon information and belief, at all times relevant herein, Defendant DON R. HANKEY ("DON HANKEY") is and was a director of and owns and owned a majority interest in Defendant NOWCOM.  Upon information and belief, at all times relevant herein, Defendant RUFUS HANKEY is and was the President of Defendant NOWCOM.

8.      Upon information and belief, at all times relevant herein, Defendant RUFUS HANKEY is and was a resident of California, and an officer and managing agent of Defendant NOWCOM.  Upon information and belief, at all times relevant herein, RUFUS HANKEY is and was the President of Defendant NOWCOM, the

1 Vice President of Defendant WESTLAKE SERVICES, INC. d/b/a Westlake

2 Financial Services ("WESTLAKE"), and the son of Defendant DON HANKEY.

3     9.     Upon information and belief, at all times relevant herein, Defendant

4 WESTLAKE is and was a corporation organized and existing under the laws of the

5 state of California, with its principal place of business in Los Angeles, California.

6 Upon information and belief, at all times relevant herein, Defendant DON

7 HANKEY is and was the President and Chairman of the Board of Defendant

8 WESTLAKE and RUFUS HANKEY is and was the Vice President of Defendant

9 WESTLAKE.  Upon information and belief, at all times relevant herein, Defendant

10 DON HANKEY owns and owned a majority interest in Defendant WESTLAKE.

11     10.     Upon information and belief, at all times relevant herein, Defendant

12 HANKEY INVESTMENT COMPANY, L.P. ("HANKEY INVESTMENT") is and

13 was a limited partnership organized and existing under the laws of the state of

14 California, with its principal place of business in Los Angeles, California.  Upon

15 information and belief, at all times relevant herein, Defendant DON HANKEY is

16 and was the Chairman and CEO of Defendant HANKEY INVESTMENT.  Upon

17 information and belief, at all times relevant herein, Defendant DON HANKEY

18 owns and owned a majority interest in Defendant HANKEY INVESTMENT.

19     11.     Upon information and belief, at all times relevant herein, Defendant

20 HANKY GROUP is and was an unincorporated business association consisting of

21 the following nine "sister" companies: Defendant NOWCOM, Defendant

22 WESTLAKE, Defendant HANKEY INVESTMENT,  Knight Management

23 Insurance Services, LLC, Midway Car Rental, HFC Acceptance, LLC, Toyota of

24 North Hollywood, Midway Ford, Midway Group, and Midway Automotive Group.

25 Upon information and belief, at all times relevant herein, Defendant DON

26 HANKEY owns and owned a majority interest in each of the nine companies which

27 make up Defendant HANKEY GROUP.  Upon information and belief, at all times

28 relevant herein, HANKEY GROUP consists and consisted of a voluntary group of

1  persons and companies formed by mutual consent for the purpose of promoting the

2  common enterprise and prosecuting the common objective of increasing the

3  financial status and wealth of its members, primarily through the auto industry.

4        12.    Upon information and belief, at all times relevant herein, Defendant

5  DON HANKEY is and was a resident of California, and an officer and managing

6  agent of Defendants NOWCOM, HANKEY INVESTMENT, and WESTLAKE.

7  Upon information and belief, at all relevant times herein, Defendant DON

8  HANKEY holds and held the following positions within the HANKEY GROUP:

9  director of Defendant NOWCOM, Principal of Defendant HANKEY

10  INVESTMENT, and President of Defendant WESTLAKE.  Upon information and

11  belief, at all times relevant herein, Defendant DON HANKEY owns and owned a

12  majority interest in each of Defendants NOWCOM, HANKEY INVESTMENT, and

13  WESTLAKE.  Upon information and belief, DON HANKEY is the father of

14  Defendant RUFUS HANKEY.

15        13.    Plaintiff FINANCE EXPRESS is unaware of the true names and

16  capacities, whether individual, corporate, associate, or otherwise, of defendants

17  DOES 1 through 10, inclusive, or any of them, and therefore sues these defendants,

18  and each of them, by such fictitious names.  FINANCE EXPRESS will seek leave of

19  this Court to amend this complaint when the status and identities of these defendants

20  are ascertained.

21        14.    Upon information and belief, at all times relevant herein, Defendants

22  were the agents of each other, and in doing the things alleged herein, each defendant

23  was acting within the course and scope of its agency and was subject to and under

24  the supervision of its co-defendants.

25             **FACTS GIVING RISE TO THIS ACTION**

26        **The Finance Express® Trade and Service Mark and Trade Name**

27        15.    Plaintiff FINANCE EXPRESS is in the business of providing software

28  to automate and facilitate credit relationships between used automobile dealers and

lenders.  Plaintiff FINANCE EXPRESS, since it was founded on or about July 24, 2003 and incorporated as Finance Express LLC, has operated this business throughout the State of California and in interstate commerce under the trade name of "Finance Express®."  Plaintiff FINANCE EXPRESS has always had a reputation for offering excellent products and top quality service for a reasonable cost, and, as a result, Plaintiff has won considerable goodwill for its business.  The public, and in particular, the relevant market in which Plaintiff FINANCE EXPRESS competes, has come to associate the name "Finance Express®" as signifying Plaintiff's specific business.

16.     Plaintiff FINANCE EXPRESS owns and operates its business out of its main website, <**financeexpress.com**>, which was registered to David Huber, a founder of Plaintiff FINANCE EXPRESS, on December 15, 1999.  Plaintiff FINANCE EXPRESS uses the Internet as a marketing channel for its primary product, Finance Express® System ("Finance Express® DMS"), its proprietary Internet-based technology platform that enables auto dealers to obtain financing for their inventory—including facilitating credit applications, access to credit bureaus, and electronic contracting and escrow services—using one integrated and solution.

17.     To distinguish its line of services from competitors, Plaintiff FINANCE EXPRESS has developed several distinctive trade and service marks.  In particular, Plaintiff FINANCE EXPRESS has caused to be registered on the Principal Register of the United States Patent and Trademark Office the "Finance Express®" service mark, Reg. No. 3,359,832, registered December 25, 2007.  A true and correct copy of this registration is attached as Exhibit A.

18.     Plaintiff FINANCE EXPRESS uses the name of its business and the name by which it was incorporated, Finance Express®, as its trade name.  The Finance Express® mark and trade name is, at a minimum, descriptive, and has achieved secondary meaning within the automotive dealer and financing industry, and in particular with used auto dealers who are the consumers of Plaintiff

1   FINANCE EXPRESS' products and services.  The mark has continuously and

2   exclusively been associated with Plaintiff FINANCE EXPRESS and its standard of

3   excellence within the used auto dealer industry for since its inception.

### The Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> Trademarks

5       19.     Plaintiff FINANCE EXPRESS is the owner of the unregistered marks,

6   Tracker$^{TM}$ and Tracker DMS$^{TM}$, which designate the proprietary Tracker Dealer

7   Management Software ("Tracker$^{TM}$" or "Tracker DMS$^{TM}$").  The Tracker DMS$^{TM}$

8   software is a full-featured, web-based dealer management database solution that

9   enabled auto dealers to track their profitability, manage their inventory, conduct

10   sales and collection activities, access their accounting programs and online services,

11   and more effectively market their business.

12       20.     The Tracker$^{TM}$ software was owned and operated by Manheim

13   Interactive, Inc. and its predecessors in interest ("Manheim"), from at least as early

14   as October 21, 1997, until on or about May 7, 2007.  Upon information and belief,

15   the Tracker software was initially owned and operated by Innovative Computer

16   Technologies, Inc., a Florida corporation.  On or about July 2, 1997, Innovative

17   Computer Technologies, Inc., sold substantially all of its assets and business

18   operations to Manheim's Dealer Support Services, Inc., a Delaware corporation.

19   Effective on or about January 1, 2002, Manheim's Dealer Support Services, Inc.,

20   was converted to a Delaware limited liability company and changed its name to

21   Manheim's Dealer Support Services, L.L.C.  Effective on or about December 21,

22   2005, Manheim Dealer Support Services, L.LC., was dissolved and its assets and

23   business operations were assigned to Manheim Interactive, Inc., a Delaware

24   corporation.

25       21.     The Manheim Tracker$^{TM}$ product was the most successful and primary

26   dealer management software on the market for many years, at one time enjoying a

27   clientele of over 10,000 dealer users.  In the automotive financing industry, which is

28   relatively small, this number represents a dominant market share.

22.     The Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks are, at a minimum, descriptive, and have achieved secondary meaning within the automotive dealer and financing industry, and in particular with used auto dealers who are the consumers of the Tracker DMS<sup>TM</sup> product.  The marks have continuously and exclusively been associated with Tracker DMS<sup>TM</sup> software for at least the past ten years.

23.     On or about May 7, 2007, Plaintiff FINANCE EXPRESS purchased the rights to the Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks from Manheim for good and valuable consideration as part of a business deal with Manheim ("Manheim Agreement").  FINANCE EXPRESS thus owns the rights to the marks, Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup>, including but not limited to the attendant goodwill and equity associated with the marks.  As a result of the change in ownership of the Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks, Manheim's website for the Tracker DMS<sup>TM</sup> software, <**trackeronline.com**>, now directs end-users to a website owned and operated by FINANCE EXPRESS, <**financeexpress.com/trackeronline**>.

24.     The Tracker DMS<sup>TM</sup> product is no longer offered for sale but, as part of the Manheim Agreement, Plaintiff FINANCE EXPRESS agreed to offer service for the Tracker DMS<sup>TM</sup> product through the end of 2007, with the goal of converting all of Manheim's Tracker DMS<sup>TM</sup> customers to the FINANCE EXPRESS' successor software to the Tracker DMS<sup>TM</sup> product:  Finance Express® DMS.  Each Tracker DMS<sup>TM</sup> customer represents thousands of dollars in revenue for Plaintiff FINANCE EXPRESS.

## THE INTERNET

25.     The Internet is a worldwide network of computers through which businesses and individuals disseminate information and promote their products and services to consumers and other businesses.  It has been estimated that over a billion people worldwide use the Internet.

26.     An increasingly important part of the Internet is the so-called "World Wide Web," comprising a system of interlinked documents accessed via the

Internet, which can be navigated by using a computer's mouse pointer to select special words or pictures called "hotlinks" or "hyperlinks." The advantage of the World Wide Web, from the end-user's point of view, is the ability to "hop" from one computer to another through a connection to a local Internet access provider. Each "hop" connects the user to a different computer somewhere else in the world. Additionally, end-users can search for and retrieve particular information from the entire Internet network with one command. This simple, easy-to-use method of navigating the Internet—commonly referred to as "surfing the net" with a "web browser," software that enables end-users to view webpages—has drawn literally millions of new non-technical end-users to the Internet. Consequently, all manner of governments, corporations, and individuals are now disseminating information and marketing and promoting their products and services on the World Wide Web.

27.     The World Wide Web uses a common addressing scheme to find other computers attached to the Internet. Every computer with access to the Internet has its own unique Internet address, which can be expressed either numerically or alphanumerically. The numeric address, referred to as the "IP address," comprises four numbers separated by periods (*e.g.*, "128.101.9.30"). The alphanumeric address, referred to as the "domain name," consists of a string of characters separated by periods.

28.     Within the Internet addressing scheme, the "domain name" serves as the primary identifier of the source or subject matter of information, products, or services provided on the Internet. Once a domain name is established, information about the presence and location of the computer having that domain name (*i.e.*, the computer's IP address) is distributed to and stored in the databases of tens of thousands of computers all around the world. The computers that contain these domain name databases, called "domain name servers," then "serve" addressing information to millions of other Internet computers on demand. This system of distribution and storage of domain names in computers around the world makes it

both physically and technically impossible for two distinct sites on the World Wide Web to have the same domain name.

29.     Domain name addresses are read from right to left.  Most commercial domain names consist of two levels.  The first address level is referred to as the top-level domain.  There are currently 18 world-wide generic top-level domains, including ".com," ".net," ".org," ".edu," and ".biz."  Commercial entities primarily use the ".com" designation for their sites on the internet (commonly referred to as "websites").  The second-level domain name, in contrast to the top-level domain name, can consist of any string of characters.  It is thus frequently used to identify the source or nature of the products, information or services promoted on the associated website.  This practice has become so prevalent that, to a large extent, end-users have come to expect that the domain name of the official website for a product or company consists of the product or company's name or trademark plus the ".com" suffix.  Thus, for example, an end-user seeking to find the official website for Plaintiff FINANCE EXPRESS would reasonably start by accessing the website at <**financeexpress.com**>.  Most websites have at least one "post-domain path," consisting of a string of alphanumeric characters that can be set off by forward slashes, which follow the top-level domain.  For example, the post-domain path in <**financeexpress.com/trackeronline**> is "trackeronline."

30.     An entity or an individual can register a domain name with a "domain name registrar," such as a company accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN").  An end-user, alone, cannot register and manage their domain name information with ICANN.  Domain names are ultimately registered with the registry (Network Solutions, Inc.) and not with ICANN, which oversees the management of domain names and IP addresses.  A designated domain name registrar must be chosen to have one's domain name(s) registered with Network Solutions, Inc.,  and managed with ICANN on their behalf.  The main domain name registrar, with over 20 million domains, is GoDaddy.com, Inc. ("Go

1  Daddy").  For a fee, an end-user may register a domain name that has not already
2  been registered with a retail domain name registrar such as Go Daddy.

3      31.    Web page authors can embed into any image or text a hyperlink, which
4  is a reference or navigation element in a webpage that directs the end-user to another
5  webpage.  End-users are able to click on hyperlinked text or images and be taken to
6  another webpage whose address has been embedded in the link.

7      32.    In addition to disseminating and receiving information through
8  websites, Internet users can send and receive personalized messages through the use
9  of electronic mail ("e-mail").  E-mail addresses are identified by a string of
10  characters (commonly referred to as "an alias") followed by the "@" symbol and
11  then a domain name (*e.g.*, jones@company.net).

12  ## THE COMMINGLED HANKEY ENTITIES

13      33.    Upon information and belief, Defendant HANKEY GROUP holds
14  itself out as a single entity, promulgating the following information on its website on
15  the "Home" page of <**hankeygroup.com**>:

16      (a)    "Hankey Group has been in business since 1972, and currently
17          consists of nine sister companies in Southern California."

18      (b)    "With over $920,000,000 in assets, the companies include
19          financial, real estate, insurance, and technology services companies as well as
20          rental car and dealership operations."

21      (c)    "The group is controlled by Don R. Hankey."

22      (d)    "Hankey Group Operating Facts":

23          i.    "Assets of $920,000,000"

24          ii.    "Number of employees in 2006: 1,257"

25          iii.    "Annual sales growth since 1980: 18%"

26          iv.    "Annual profit growth since 1980: 23%"

27          v.    "Annual net worth growth since 1980: 21%"

28          vi.    "Annual asset growth since 1992: 18%"

(e)   "Hankey Group has five primary lines of credits":

      i.   "'Private' Bank $300 million"

      ii.   "Bank of America $185 million"

      iii.   "Wells Fargo $150 million"

      iv.   "Comerica Bank Line (syndicate) of $125 million"

      v.   "Citibank $80 million"

34.   Upon information and belief, DON HANKEY has boasted about his prowess with, and goal of taking advantage of, the Internet to improve business for all companies in Defendant HANKEY GROUP, advertising that: "With the advent of the Internet, [DON HANKEY] has swiftly incorporated technology into every aspect of the Hankey Group of companies."

35.   Upon information and belief, NOWCOM is in the business of selling, promoting, and maintaining Dealer Desktop, a competitive product with Tracker DMS$^{TM}$ and Finance Express® DMS, to used car dealers.  Upon information and belief, NOWCOM advertises Dealer Desktop as "a full-featured car dealer software solution" that enables auto dealers "to manage, sell and advertise [their] vehicle inventory."  Upon information and belief, Dealer Desktop is a non web-based software program.  FINANCE EXPRESS and NOWCOM are direct competitors in the automotive finance technology industry.

36.   Upon information and belief, Defendant WESTLAKE holds itself out to be "an Internet based, privately held finance company that specializes in the acquisition and servicing of sub-prime and non-prime automotive retail installment contracts."  Upon information and belief, Defendant WESTLAKE is the "financial services arm" of Defendant HANKEY GROUP, and provides the financing to auto dealers who use the Dealer Desktop program.  Upon information and belief, one of Defendant WESTLAKE's products is the Dealer Desktop product, which is advertised on Defendant WESTLAKE's website on the "Featured Products" page of <**westlakefinancial.com**>.

37.     Upon information and belief, the "Corporate Headquarters" for Defendant HANKEY GROUP is located at 4751 Wilshire Blvd., Suite 110, Los Angeles, CA 90010.  Upon information and belief, Defendant HANKEY INVESTMENT is located at the same address in the same suite.  Upon information and belief, Defendant NOWCOM's business is located at the same address in Suite 115.  Upon information and belief, Defendant WESTLAKE's business is located at the same address in Suite 100 and has been since on or about March 1999.

38.     Upon information and belief, Defendant HANKEY INVESTMENT owns the real estate where the companies of Defendant HANKEY GROUP are located, including the offices of Defendants NOWCOM, WESTLAKE, and HANKEY INVESTMENT.  Upon information and belief, the real estate owned by HANKEY INVESTMENT, located at 4751 Wilshire Blvd., Los Angeles, CA 90010 (also known as the Park Mile Center), was purchased by Defendant HANKEY INVESTMENT at the direction of Defendant DON HANKEY in 1998 and consists of a three-story building complex sitting atop 1.47 acres of land.

39.     Upon information and belief, Defendant NOWCOM owns the domain name <**hankeygroup.com**>, provides web hosting services for Defendant HANKEY GROUP, and owns the servers which host its site.  Upon information and belief, Defendant NOWCOM also owns and operates the following websites of Defendants NOWCOM, WESTLAKE, and HANKEY INVESTMENT: <**nowcom.com**>, <**westlakefinancial.com**>, and <**hankeyinvestment.com**>, respectively.  Upon information and belief, Defendant NOWCOM provides web hosting services and owns and operates the servers for itself and Defendants WESTLAKE and HANKEY INVESTMENT.  Upon information and belief, all Defendants use the Internet as a marketing channel.

40.     Upon information and belief, the nine sister companies of Defendant HANKEY GROUP, including Defendants NOWCOM, WESTLAKE, and

HANKEY INVESTMENT, share a single "Executive Team," which includes Defendant DON HANKEY and his son, Defendant RUFUS HANKEY.

41.     Upon information and belief, Defendant HANKEY GROUP and the entities which make up the HANKEY GROUP of companies share an attorney and are represented by Tony Molino, Esq. of Molino & Associates.  Upon information and belief, the office of Molino & Associates is located at 4751 Wilshire Blvd., Suite 125, Los Angeles, CA 90010.  Upon information and belief, the office of Defendants' shared attorney is located at the same address and business location of Defendants, the real estate for which is owned by Defendant HANKEY INVESTMENT.

42.     Upon information and belief, the entities of Defendant HANKEY GROUP, including Defendants NOWCOM, WESTLAKE, and HANKEY INVESTMENT, are held out as one commingled entity with shared bank accounts, lines of credits, officers, managers, employees, ownership, real estate, and office space—all of whom who share a unity of interest, ownership, and management among them.

43.     Upon information and belief, Defendants NOWCOM, WESTLAKE, and HANKEY INVESTMENT do not observe corporate formalities and are not separately managed.  Fraud, injustice, and inequity would result if the corporate forms of Defendants NOWCOM, WESTLAKE, and HANKEY INVESTMENT were recognized for purposes of this lawsuit.

44.     Upon information and belief, Defendant DON HANKEY directs, controls, ratifies, participates in, and is the moving force behind Defendant HANKEY GROUP and the other Defendants.  Upon information and belief, the entities which make up Defendant HANKEY GROUP, including Defendants NOWCOM, WESTLAKE, and HANKEY INVESTMENT, are closely held corporations all controlled by Defendant DON HANKEY.  Upon information and belief, Defendant DON HANKEY communicates with Defendant RUFUS

1   HANKEY frequently, on a daily or semi-daily basis.  Upon information and belief,

2   Defendant DON HANKEY ratified or was the moving force behind Defendants

3   RUFUS HANKEY and NOWCOM's registration of the Infringing Tracker$^{TM}$

4   Websites and the Infringing Finance Express$^{®}$ Website, the false "Press Release"

5   advertisements, and the aggressive and unlawful marketing activities of Defendants

6   RUFUS HANKEY and NOWCOM.

7        45.    Upon information and belief, and at all times mentioned herein,

8   Defendants NOWCOM and RUFUS HANKEY acted under the direction and

9   control and as agents of Defendants HANKEY GROUP, HANKEY

10   INVESTMENT, and WESTLAKE, all of which acted under the direction and

11   control and agents of Defendant DON HANKEY.  Upon information and belief,

12   Defendant NOWCOM is the product "arm" of Defendant HANKEY GROUP,

13   providing and servicing the Dealer Desktop program; Defendant WESTLAKE is the

14   financial "arm" of Defendant HANKEY GROUP, provides the financing services

15   for Dealer Desktop; and Defendant HANKEY INVESTMENT is the real estate

16   "arm" of Defendant HANKEY GROUP, providing the office space enabling the acts

17   of all Defendants.  Due to Defendants' failure to observe corporate formalities, the

18   actions of each Defendant complained of herein are attributable to each other

19   Defendant jointly and severally.

20                 **DEFENDANTS' UNLAWFUL ACTIVITIES**

21                     **The Infringing Websites**

22        46.    Upon information and belief, on or about May 31, 2007, Defendant

23   RUFUS HANKEY, or an agent acting under the direction and control of Defendant

24   RUFUS HANKEY, registered a series of domain names with Go Daddy on behalf

25   of Defendant NOWCOM which constituted unlawful cybersquatting and infringed

26   upon Plaintiff FINANCE EXPRESS' intellectual property rights.  Upon information

27   and belief, these websites were: <**trackerdmsonline.com**>,

28   <**trackerconversions.com**>, <**trackerupgrade.com**>, <**tracker-dmsonline.com**>,

1   <**tracker-upgrade.com**>, <**tracker-dms.com**>, <**besttrackerconversion.com**>,

2   <**newtracker-dms.com**>, and <**nomoretracker.com**> (collectively, the "Infringing

3   Tracker<sup>TM</sup> Websites"); and <**financeexpressdms.com**> (the "Infringing Finance

4   Express® Website").

5        47.     Upon information and belief, with respect to the Infringing Finance

6   Express® Website, Defendants RUFUS HANKEY and NOWCOM willfully and

7   maliciously chose a domain name confusingly similar to <**financeexpress.com**>

8   and to the Finance Express® mark and trade name, the rights to which are owned by

9   Plaintiff FINANCE EXPRESS, in order to confuse consumers and mislead them

10   into believing that they would be able to obtain information about FINANCE

11   EXPRESS and its products from the Infringing Finance Express® Website.

12   However, that is not the case.

13        48.     Upon information and belief, with respect to the Infringing Tracker<sup>TM</sup>

14   Websites, Defendants RUFUS HANKEY and NOWCOM willfully and maliciously

15   chose domain names confusingly similar to <**trackeronline.com**> and to the

16   Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks, the rights to which are owned by Plaintiff

17   FINANCE EXPRESS, in order to confuse consumers and mislead them into

18   believing that they would be able to obtain information about and purchase the

19   Tracker DMS<sup>TM</sup> product from the Infringing Tracker<sup>TM</sup> Websites.  However, that is

20   not the case.

21   **The False and Misleading "Press Release"**

22        49.     Upon information and belief, featured on the Infringing Tracker<sup>TM</sup>

23   Websites and the Infringing Finance Express® Website was a false "Press Release"

24   purporting to be issued by Plaintiff FINANCE EXPRESS and in violation of

25   FINANCE EXPRESS' rights in the Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks and

26   Finance Express® mark and trade name, a true and correct color copy of which,

27   printed on December 18, 2007 from <**financeexpressdms.com**>, is attached as

28   Exhibit B.

50.   Upon information and belief, a visitor to the Infringing Tracker$^{TM}$ Websites and the Infringing Finance Express$^{®}$ Website saw the webpage attached as Exhibit B.  The website, styled as a "Press Release," purported to announce that "Nowcom offers a seamless migration from Manheim Tracker DMS to Dealer Desktop."  [Exh. B at 1.]  At the top of the page was a banner advertisement which stated: "Why pay $300 a month for a DMS solution that doesn't do everything?"  [*Id.*]  The false and misleading "Press Release" informed readers that "[i]t was announced on May 24th that Finance Express, which operates the first online auto finance platform specifically designed for the independent automotive used car dealer, has bought the Manheim Tracker Dealer Management system."  [*Id.*]

51.   Upon information and belief, the false "Press Release" was also promulgated, displayed, and promoted on each of the Infringing Tracker$^{TM}$ Websites and the Infringing Finance Express$^{®}$ Website from as early as May 31, 2007.

52.   The false "Press Release" makes false and unsupported assertions regarding Plaintiff FINANCE EXPRESS' deal with Manheim, claiming:

> Auto dealers do not seem happy with the breaking news not only because of the high price they will be paying in the near future, but they seem to prefer a non web-based dealer software solution on which they could manage their used car dealership.
>
> Used car dealer software companies are trying to convert these unhappy used car dealers and convert them from Manheim Tracker DMS Finance Express to their software solution.

[*Id.*]  In the next sentence, purportedly "[t]o illustrate the situation," the false "Press Release" describes Dealer Desktop's "launch[ of] an aggressive marketing campaign," which "give[s] used car dealers six reasons to convert to [*sic*] Manheim Tracker DMS Finance Express."  [*Id.*]  Such claims were intended to undermine the confidence of actual and potential users of Tracker DMS$^{TM}$ and Finance Express$^{®}$ DMS in the products offered by Plaintiff FINANCE EXPRESS and to divert customers away from FINANCE EXPRESS to NOWCOM.

53. The false "Press Release" further misleads readers in that it includes sections entitled "About Nowcom," "About Dealer Desktop," "About Finance Express," and "About Manheim Tracker" [*id.*], mimicking the distinctive style and custom of traditional press releases.

54. The "About Finance Express" section of the false "Press Release" includes a link to Plaintiff FINANCE EXPRESS' website, <**financeexpress.com**>, the rights to which belong to FINANCE EXPRESS.  The "About Manheim Tracker" section includes a link to <**trackeronline.com**>, the rights to which belong to FINANCE EXPRESS.

55. Plaintiff FINANCE EXPRESS believes that Defendants RUFUS HANKEY and NOWCOM, with the ratification and support of Defendant DON HANKEY, and in concert with the other entities of Defendant HANKEY GROUP, Defendants WESTLAKE and HANKEY INVESTMENT, commenced such unlawful conduct around the time of registering the Infringing Tracker$^{TM}$ Websites and the Infringing Finance Express® Website.

56. The actions of Defendants RUFUS HANKEY and NOWCOM were designed and intended to give a false and misleading impression that FINANCE EXPRESS was a party to the false "Press Release" and/or supported and endorsed the claims made within the false "Press Release."  In addition, Defendant RUFUS HANKEY and NOWCOM intended to suggest and did suggest—in violation of Plaintiff FINANCE EXPRESS' rights in the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and its Finance Express® mark and trade name—that the Dealer Desktop product is a substitute for and endorsed by the owners of the Tracker DMS$^{TM}$ product.

57. Upon information and belief, Defendants RUFUS HANKEY and NOWCOM have also embarked on an advertising campaign in print media for the Dealer Desktop product related to and reflected in the false "Press Release" advertisement displayed on the Infringing Tracker$^{TM}$ Websites and the Infringing Finance Express® Website.  [*See* Exh. B.]  Upon information and belief, Defendant

NOWCOM placed an advertisement in the August 2007 issue of *SubPrime Auto Finance News*, purporting to give "six reasons to TEST DRIVE and MIGRATE to Dealer Desktop" ("Six Reasons Campaign").  Upon information and belief, NOWCOM repeated its Six Reasons Campaign in the September 2007 issues of *Used Car Dealer Magazine* and *Auto Remarketing Magazine*.  The Six Reasons Campaign can be found on NOWCOM's website at <**nowcom.com/migrate**>.

58.     Upon information and belief, the same Six Reasons Campaign was featured on all websites displaying the false "Press Release," to the right of the text of the purported "Press Release."  Upon information and belief, the text on the false "Press Release" webpage is the following: "Nowcom launches a marketing campaign with 6 reasons to convert used car dealers from Manheim Tracker Finance Express to Dealer Destop [*sic*]," with a hyperlink to <**nowcom.com/migrate**> embedded in the words "6 reasons."  Below it, the false "Press Release" purports to offer a "Free Trial" of the Dealer Desktop product, geared toward converting existing Tracker DMS$^{TM}$ and Finance Express$^{®}$ DMS users to the competing Dealer Desktop product.

59.     Due to Defendants' unlawful conduct with respect to the Infringing Tracker$^{TM}$ Websites, the Infringing Finance Express$^{®}$ Website, and the false "Press Release" advertisements, the Six Reasons Campaign received more attention and credence from dealers who otherwise would not have done so.  As a result, Defendants unlawfully and unfairly misled Plaintiff FINANCE EXPRESS' customers, potential customers, and the consuming public regarding Dealer Desktop, Tracker DMS$^{TM}$, and FINANCE EXPRESS.  Upon information and belief, Defendant NOWCOM has enjoyed a significant increase in dealer interest in, response to, and conversion to the Dealer Desktop product as a result of Defendants' unlawful activities and unfair competition undertaken since May 31, 2007.

**Plaintiff's Discovery of Defendants' Unlawful Conduct**

60.     On or about October 5, 2007, Plaintiff FINANCE EXPRESS discovered the existence of one of the Infringing Tracker$^{TM}$ Websites, <**trackerdmsonline.com**>, which featured the false "Press Release" advertisement, a true and correct color copy of which, printed on October 5, 2007 from <**trackerdmsonline.com**>, is attached as Exhibit C.

61.     Immediately upon learning of Defendants' unlawful conduct with respect to <**trackerdmsonline.com**>, on October 5, 2007, Plaintiff FINANCE EXPRESS issued a cease and desist letter to Defendants RUFUS HANKEY and NOWCOM, asserting, *inter alia*, FINANCE EXPRESS' rights to the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and Finance Express$^®$ trade name and demanding that RUFUS HANKEY and NOWCOM remove the infringing website.  Plaintiff FINANCE EXPRESS also demanded that Defendant NOWCOM "refrain from using the Tracker and Tracker DMS marks and the name of Finance Express in any manner that suggests that [NOWCOM's] promotions or other activities are authorized or sponsored by, or affiliated with Finance Express."  A true and correct copy of the October 5, 2007 cease and desist letter is attached as Exhibit D.  Upon information and belief, the webpage at <**trackerdmsonline.com**> was removed on or about October 5, 2007, after Plaintiff FINANCE EXPRESS sent its cease and desist letter.  Upon information and belief, the aforementioned domain name remained registered to Defendant NOWCOM until on or about November 29, 2007.

62.     On or about October 26, 2007, Defendant RUFUS HANKEY emailed the founders of Plaintiff FINANCE EXPRESS, David Huber and Fred Morgan, a letter purporting to "apologize if [his] aggressive marketing caused problems with [Plaintiff FINANCE EXPRESS]," a true and correct copy of which is attached as Exhibit E.

63.     On or about December 14, 2007, Plaintiff FINANCE EXPRESS discovered the existence of Defendants' continued unlawful activity, *i.e.*, the

Infringing Finance Express® Website, <**financeexpressdms.com**>, which featured the false "Press Release" advertisement also featured on <**trackerdmsonline.com**>. Through the discovery of the Infringing Finance Express® Website and the display of the false "Press Release" on that website, Plaintiff FINANCE EXPRESS discovered that Defendants had continued their unlawful and infringing conduct—despite the October 5, 2007 cease and desist letter, the filing on or about October 16, 2007 of Plaintiff's Complaint, and Defendant RUFUS HANKEY's October 26, 2007 purported letter of apology.

64.     Upon information and belief, FINANCE EXPRESS has been damaged as a result of, *inter alia*, Defendant NOWCOM's conversion of existing and potential Tracker DMS™ and Finance Express® DMS customers to the Dealer Desktop software, as a proximate result of the false and misleading advertising at the Infringing Tracker™ Websites and the Infringing Finance Express® Website.

65.     Plaintiff FINANCE EXPRESS now brings the instant action to recover damages for Defendants' infringing and unlawful conduct, and to obtain injunctive relief with respect to the Tracker™ and Tracker DMS™ marks and the Finance Express® mark and trade name.

## **FIRST CLAIM FOR RELIEF**

### **(Against All Defendants for Cybersquatting—15 U.S.C. § 1125(d)(1))**

66.     Plaintiff FINANCE EXPRESS realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 65 above, as though fully set forth herein.

67.     Plaintiff FINANCE EXPRESS is the true and rightful owner of the valid and legally protectable registered Finance Express® service mark and trade name, registered on the Principal Register of the USPTO on December 25, 2007, Reg. No. 3,359,832 [*see* Exh. A], including but not limited to the goodwill and equity associated with the mark.  The mark is, at a minimum, descriptive and has achieved secondary meaning with the relevant consuming public, which has come to

recognize products and services bearing the Finance Express® mark as high quality products and services connected with FINANCE EXPRESS. Due to FINANCE EXPRESS' integrity and investment of time, effort, and other resources to promote and protect the Finance Express® mark as a symbol of excellence, the mark now enjoys, and has long enjoyed, an exceedingly valuable goodwill and strong secondary meaning in the market of consumers and potential consumers of FINANCE EXPRESS' products and services, the United States, and throughout the world, as associated with FINANCE EXPRESS

68.     Plaintiff FINANCE EXPRESS owns the rights to the valid and legally protectable unregistered word marks, Tracker$^{TM}$ and Tracker DMS$^{TM}$, including but not limited to the goodwill and equity associated with those marks. The marks are, at a minimum, descriptive and have achieved secondary meaning with the relevant consuming public, which has come to recognize products and services bearing the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks as high quality products and services connected with FINANCE EXPRESS. Due to FINANCE EXPRESS and its predecessors in interest's integrity and investment of time, effort, and other resources to promote and protect the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks as symbols of excellence, the marks now enjoy, and have long enjoyed, an exceedingly valuable goodwill and strong secondary meaning in the market of consumers and potential consumers of the Tracker DMS$^{TM}$ family of products and services, the United States, and throughout the world, as associated with the Tracker DMS$^{TM}$ product and FINANCE EXPRESS.

69.     Upon information and belief, and at all times mentioned herein, Defendants NOWCOM and RUFUS HANKEY acted under the direction and control and as agents of Defendants HANKEY GROUP, HANKEY INVESTMENT, and WESTLAKE, all of which acted under the direction and control and agents of Defendant DON HANKEY. Due to Defendants' failure to

1  observe corporate formalities, the actions of each Defendant complained of herein

2  are attributable to each other Defendant jointly and severally.

3        70.    Defendants' acts complained of herein constitute unlawful

4  cybersquatting, in that Defendants, and each of them, have—knowingly and with a

5  bad faith intent to profit therefrom—registered, trafficked in, maintained, or used

6  domain names that are virtually identical to, confusingly similar to, and dilutive of

7  Plaintiff FINANCE EXPRESS' Tracker[TM] and Tracker DMS[TM] marks and its

8  Finance Express[®] mark and trade name.

9        (a)    Defendants have no trademark or other intellectual property

10 rights in Plaintiff FINANCE EXPRESS' Tracker[TM] and Tracker DMS[TM] marks or

11 its Finance Express[®] mark and trade name.

12       (b)    The Infringing Tracker[TM] Websites' domain names consist of a

13 term commonly identified with Plaintiff's Tracker DMS[TM] product.  The Infringing

14 Finance Express[®] Website's domain name consists of a term commonly identified

15 with Plaintiff FINANCE EXPRESS.

16       (c)    Defendants have not made prior use of the Infringing Tracker[TM]

17 Websites in connection with the *bona fide* offering of goods and services.

18 Defendants have not made prior use of the Infringing Finance Express[®] Website in

19 connection with the *bona fide* offering of goods and services.

20       (d)    Defendants have made commercial use of at least ten domain

21 names containing Plaintiff FINANCE EXPRESS' Tracker[TM] and Tracker DMS[TM]

22 marks and the Finance Express[®] mark and trade name.

23       (e)    Defendants' use of the Infringing Tracker[TM] Websites and

24 Infringing Finance Express[®] Website for commercial gain creates a likelihood of

25 confusion as to Plaintiff FINANCE EXPRESS' sponsorship, affiliation, or

26 endorsement of the sites and of the Dealer Desktop product.

27       71.    By reason of the foregoing, Defendants, and each of them, have

28 violated and are continuing to violate the ACPA, 15 U.S.C. § 1125(d)(1).

72.     As an actual and proximate result of Defendants' acts of unlawful cybersquatting, Plaintiff FINANCE EXPRESS has suffered, and will continue to suffer irreparable injury to its business, reputation, and goodwill.  Plaintiff has no adequate remedy at law for these wrongs and injuries.  The damage to Plaintiff includes harm to its goodwill and reputation that money cannot compensate. Plaintiff is, therefore, entitled to a preliminary and permanent injunction, as set forth in 15 U.S.C. § 1117, restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from engaging in false advertising and from otherwise making or utilizing false and misleading statements in connection with the promotion, advertisement or sale of Defendants' goods, services or commercial activities.

73.     Defendants' acts constitute unlawful cybersquatting.  Pursuant to 15 U.S.C. § 1125(d)(1)(C), Plaintiff FINANCE EXPRESS is entitled to an order: (1) transferring the Infringing Tracker$^{TM}$ Websites and the Infringing Finance Express$^®$ Website to Plaintiff; or (2) requiring the forfeiture or cancellation of the aforementioned domain name.

74.     Pursuant to 15 U.S.C. § 1117(d), Plaintiff FINANCE EXPRESS is entitled to recover statutory damages from each defendant in an amount not less than $1,000 and not more than $100,000 per domain name registered, maintained, and/or used by each defendant for such registration, maintenance, and/or use occurring on or after May 31, 2007.

75.     Plaintiff FINANCE EXPRESS seeks compensatory damages in the amount which will compensate it for all detriment caused by Defendants.

76.     As an actual and proximate result of Defendants' actions, Plaintiff FINANCE EXPRESS has suffered damages in the form of lost profits.  Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of Dealer

Desktop, and restitution and the disgorgement of Defendants' ill-gotten gains, as well as recovery of costs of this action.

77.   Plaintiff FINANCE EXPRESS is informed and believes that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### (Against All Defendants for Trademark and Trade Name Infringement—15 U.S.C. § 1125(a))

78.   Plaintiff FINANCE EXPRESS realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 77 above, as though fully set forth herein.

79.   Upon information and belief, and at all times mentioned herein, Defendants NOWCOM and RUFUS HANKEY acted under the direction and control and as agents of Defendants HANKEY GROUP, HANKEY INVESTMENT, and WESTLAKE, all of which acted under the direction and control and agents of Defendant DON HANKEY.  Due to Defendants' failure to observe corporate formalities, the actions of each Defendant complained of herein are attributable to each other Defendant jointly and severally.

80.   Plaintiff FINANCE EXPRESS is the true and rightful owner of the valid and legally protectable registered Finance Express® service mark and trade name, registered on the Principal Register of the USPTO on December 25, 2007, Reg. No. 3,359,832 [*see* Exh. A], including but not limited to the goodwill and equity associated with the mark.  The mark is, at a minimum, descriptive and has achieved secondary meaning with the relevant consuming public, which has come to recognize products and services bearing the Finance Express® mark as high quality products and services connected with FINANCE EXPRESS.  Due to FINANCE

EXPRESS' integrity and investment of time, effort, and other resources to promote and protect the Finance Express® mark as a symbol of excellence, the mark now enjoys, and has long enjoyed, an exceedingly valuable goodwill and strong secondary meaning in the market of consumers and potential consumers of FINANCE EXPRESS' products and services, the United States, and throughout the world, as associated with FINANCE EXPRESS

81.     Plaintiff FINANCE EXPRESS owns the rights to the valid and legally protectable unregistered word marks, Tracker™ and Tracker DMS™, including but not limited to the goodwill and equity associated with those marks.  The marks are, at a minimum, descriptive and have achieved secondary meaning with the relevant consuming public, which has come to recognize products and services bearing the Tracker™ and Tracker DMS™ marks as high quality products and services connected with FINANCE EXPRESS.  Due to FINANCE EXPRESS and its predecessors in interest's integrity and investment of time, effort, and other resources to promote and protect the Tracker™ and Tracker DMS™ marks as symbols of excellence, the marks now enjoy, and have long enjoyed, an exceedingly valuable goodwill and strong secondary meaning in the market of consumers and potential consumers of the Tracker DMS™ family of products and services, the United States, and throughout the world, as associated with the Tracker DMS™ product and FINANCE EXPRESS.

82.     Plaintiff FINANCE EXPRESS and Defendant NOWCOM are competitors in the market for used car dealership management software.

83.     Defendants are using the Tracker™ and Tracker DMS™ marks and Finance Express® mark and trade name on the Internet in a manner intended to cause the public to believe that Defendants' products and services emanate from, or are endorsed by, affiliated with, or sponsored by, Plaintiff FINANCE EXPRESS.

84.     The nature of the Internet makes the registration and use of the Infringing Tracker™ Websites and the Infringing Finance Express® Website by

Defendants likely to cause confusion and to deceive the public in that purchasers and prospective purchasers of Plaintiff FINANCE EXPRESS' products and services are deceptively led to believe that Defendants' Infringing Tracker<sup>TM</sup> Websites and the Infringing Finance Express<sup>®</sup> Website originate with or are sponsored by or otherwise authorized by Plaintiff FINANCE EXPRESS.

85. Defendants' use of the Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks and the Finance Express<sup>®</sup> mark and trade name in Infringing Tracker<sup>TM</sup> Websites and the Infringing Finance Express<sup>®</sup> Website is likely to and does create confusion among consumers, particularly in the market in which Plaintiff FINANCE EXPRESS and NOWCOM compete. Defendants' use of the Infringing Tracker<sup>TM</sup> Websites and the Infringing Finance Express<sup>®</sup> Website in connection with a competing product is intended to and does cause confusion with the domain names <**trackeronline.com**> and <**financeexpress.com**>, the rights to both of which are owned by Plaintiff FINANCE EXPRESS.

86. Defendants' use of the Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks and the Finance Express<sup>®</sup> mark and trade name were likely to and did cause confusion, mistake, and deception as to Defendant NOWCOM's affiliation, association, or connection with Plaintiff FINANCE EXPRESS and Manheim, and Plaintiff FINANCE EXPRESS' sponsorship, endorsement, and approval of the Dealer Desktop product.

87. Upon information and belief, Defendants used the Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks and the Finance Express<sup>®</sup> mark and trade name in connection with advertising, promoting, marketing, selling the Dealer Desktop product in interstate commerce, including but not limited to on the Internet.

88. Upon information and belief, Defendants used the Tracker<sup>TM</sup> and Tracker DMS<sup>TM</sup> marks and the Finance Express<sup>®</sup> mark and trade name in connection with advertising, promoting, marketing, selling the Dealer Desktop product in comparison to the so-called "Manheim Tracker Finance Express"

1  product, which is the Tracker DMS[TM] product owned, operated, and serviced by

2  Plaintiff FINANCE EXPRESS.

3       89.  Defendants knew or should have known that its statements were false

4  and/or likely to mislead.

5       90.  Defendants' actions have at all times been without Plaintiff FINANCE

6  EXPRESS' consent.  Defendants' acts constitute willful and deliberate infringement

7  of Plaintiff FINANCE EXPRESS' Tracker[TM] and Tracker DMS[TM] marks and its

8  Finance Express[®] mark and trade name.

9       91.  As an actual and proximate result of Defendants' acts of false,

10  deceptive, and misleading descriptions of fact, representations, and advertising,

11  Plaintiff FINANCE EXPRESS has suffered, and will continue to suffer irreparable

12  injury to its business, reputation, and goodwill.  Plaintiff has no adequate remedy at

13  law for these wrongs and injuries.  The damage to Plaintiff includes harm to its

14  goodwill and reputation that money cannot compensate.  Plaintiff is, therefore,

15  entitled to a preliminary and permanent injunction, as set forth in 15 U.S.C. § 1117,

16  restraining and enjoining Defendants and their agents, servants, and employees, and

17  all persons acting thereunder, in concert with, or on their behalf, from engaging in

18  false advertising and from otherwise making or utilizing false and misleading

19  statements in connection with the promotion, advertisement or sale of Defendants'

20  goods, services or commercial activities.

21       92.  Plaintiff FINANCE EXPRESS seeks compensatory damages in the

22  amount which will compensate it for all detriment caused by Defendants.

23       93.  As an actual and proximate result of Defendants' actions, Plaintiff

24  FINANCE EXPRESS has suffered damages in the form of lost profits.  Pursuant to

25  15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants' Lanham Act

26  violations, an accounting for profits made by Defendants on sales of Dealer

27  Desktop, and restitution and the disgorgement of Defendants' ill-gotten gains, as

28  well as recovery of costs of this action.

94.     Plaintiff FINANCE EXPRESS is informed and believes that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF

**(Against Defendants Hankey Investment, Westlake, Hankey Group, and Don Hankey for Contributory Trademark and Trade Name Infringement—15 U.S.C. §§ 1114(1) & 1125(a))**

95.     Plaintiff FINANCE EXPRESS realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 94 above, as though fully set forth herein.

96.     In addition to their own infringement of FINANCE EXPRESS' trademarks and trade name, Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY have supplied to Defendants NOWCOM and RUFUS HANKEY the ability to infringe on the trademark of FINANCE EXPRESS, while having actual or constructive knowledge that Defendants NOWCOM and RUFUS HANKEY were infringing the trademarks of Plaintiff FINANCE EXPRESS.  As a result, Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY's actions constitute contributory trademark infringement, a violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

97.     Defendant HANKEY INVESTMENT supplied the necessary marketplace for Defendants RUFUS HANKEY and NOWCOM's registration of and operation of the Infringing Websites, providing the office space infrastructure necessary for Defendants to conduct their business.

98.     Defendant HANKEY INVESTMENT had complete control over the real estate and office building and space where Defendants NOWCOM, RUFUS HANKEY, DON HANKEY, and WESTLAKE conduct their business, including the

1  infringing activity described herein.  Defendant HANKEY INVESTMENT has

2  direct control of and monitors the real estate and office space at which the Hankey

3  Group of companies is headquartered.

4         99.    Defendant HANKEY INVESTMENT knew or had reason to know of

5  the unlawful activities of Defendants RUFUS HANKEY and NOWCOM, which

6  occurred on Defendant HANKEY INVESTMENT's premises, particularly in light

7  of Defendant DON HANKEY's common ownership and management of

8  Defendants NOWCOM, WESTLAKE, and HANKEY INVESTMENT.  Defendant

9  HANKEY INVESTMENT continued and continues to supply Defendants with the

10  office space and real estate which enables them to perform and continue to perform

11  the infringing acts described herein.

12        100.  Defendant WESTLAKE knew or should have known that Defendants

13  NOWCOM and RUFUS HANKEY sold, advertised, promoted, and marketed the

14  Dealer Desktop product in violation of Plaintiff FINANCE EXPRESS' trademark

15  rights in  its Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and its Finance Express® mark

16  and trade name.

17        101.  Defendant HANKEY GROUP knew or should have known that

18  Defendants NOWCOM and RUFUS HANKEY sold, advertised, promoted, and

19  marketed the Dealer Desktop product in violation of Plaintiff FINANCE EXPRESS'

20  trademark rights in  its Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and its Finance

21  Express® mark and trade name.

22        102.  Defendant DON HANKEY knew or should have known that

23  Defendants NOWCOM and RUFUS HANKEY sold, advertised, promoted, and

24  marketed the Dealer Desktop product in violation of Plaintiff FINANCE EXPRESS'

25  trademark rights in its Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and its Finance

26  Express® mark and trade name.

27        103.  As an actual and proximate result of Defendants WESTLAKE,

28  HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY's acts of

false, deceptive, and misleading descriptions of fact, representations, and advertising, Plaintiff FINANCE EXPRESS has suffered, and will continue to suffer irreparable injury to its business, reputation, and goodwill.  Plaintiff has no adequate remedy at law for these wrongs and injuries.  The damage to Plaintiff includes harm to its goodwill and reputation that money cannot compensate.  Plaintiff is, therefore, entitled to a preliminary and permanent injunction, as set forth in 15 U.S.C. § 1117, restraining and enjoining Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from engaging in false advertising and from otherwise making or utilizing false and misleading statements in connection with the promotion, advertisement or sale of Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY's goods, services or commercial activities.

104.   Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY are jointly and severally liable for the acts of trademark infringement complained of herein.

105.   Plaintiff FINANCE EXPRESS seeks compensatory damages in the amount which will compensate it for all detriment caused by Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY.

106.   As an actual and proximate result of Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY's actions, Plaintiff FINANCE EXPRESS has suffered damages in the form of lost profits. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY's Lanham Act violations, an accounting for profits made by Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and DON HANKEY

1  on sales of Dealer Desktop, and restitution and the disgorgement of Defendants' ill-

2  gotten gains, as well as recovery of costs of this action.

3      107.   Plaintiff FINANCE EXPRESS is informed and believes that

4  Defendants WESTLAKE, HANKEY INVESTMENT, HANKEY GROUP, and

5  DON HANKEY's conduct was undertaken willfully and with the intention of

6  causing confusion, mistake, or deception, making this an exceptional case entitling

7  Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15

8  U.S.C. § 1117.

9                    **FOURTH CLAIM FOR RELIEF**

10      **(Against All Defendants for False Advertising—15 U.S.C. § 1125(a))**

11      108.   Plaintiff FINANCE EXPRESS realleges and incorporates by reference

12  each and every allegation contained in paragraphs 1 through 107 above, as though

13  fully set forth herein.

14      109.   Upon information and belief, and at all times mentioned herein,

15  Defendants NOWCOM and RUFUS HANKEY acted under the direction and

16  control and as agents of Defendants HANKEY GROUP, HANKEY

17  INVESTMENT, and WESTLAKE, all of which acted under the direction and

18  control and agents of Defendant DON HANKEY.  Due to Defendants' failure to

19  observe corporate formalities, the actions of each Defendant complained of herein

20  are attributable to each other Defendant jointly and severally.

21      110.   Defendants NOWCOM and WESTLAKE, at the direction of

22  Defendants RUFUS HANKEY and DON HANKEY, advertise, market, promote,

23  distribute, finance, and sell the Dealer Desktop product throughout California and

24  the United States on the Internet.

25      111.   Defendants NOWCOM, WESTLAKE, and RUFUS HANKEY's "Press

26  Release" advertising campaign—originally discovered by Plaintiff FINANCE

27  EXPRESS on October 5, 2007 at <**trackerdmsonline.com**> and again discovered

28  by FINANCE EXPRESS on December 14, 2007 at <**financeexpressdms.com**>, and

1    featured on the other Infringing Tracker™ Websites—misrepresents the nature,

2    qualities, and characteristics of the Dealer Desktop product.  Through false and

3    misleading statements, the false "Press Release" advertising is likely to mislead

4    customers and potential customers into believing that Plaintiff FINANCE

5    EXPRESS endorses the competing Dealer Desktop product, particularly as a non

6    web-based substitute for the Tracker DMS™ product.  Such misrepresentations

7    were and are likely to influence customers' and potential customers' purchasing

8    decisions.

9        112.  Upon information and belief, Defendants' actions have deceived and

10   are likely to deceive the public, including FINANCE EXPRESS' existing and

11   potential customers, about the nature and qualities of Dealer Desktop.

12       113.  Upon information and belief, Defendants' actions have caused

13   consumers to purchase Dealer Desktop, who otherwise would not have done so.

14   Upon information and belief, Defendants' actions have caused consumers to

15   purchase Dealer Desktop, who otherwise would have remained consumers of the

16   Tracker DMS™ product.  Upon information and belief, Defendants' actions have

17   caused consumers to purchase Dealer Desktop, who otherwise would have

18   purchased Finance Express® DMS.

19       114.  As an actual and proximate result of Defendants' acts of false,

20   deceptive, and misleading descriptions of fact, representations, and advertising,

21   Plaintiff FINANCE EXPRESS has suffered, and will continue to suffer irreparable

22   injury to its business, reputation, and goodwill.  Plaintiff has no adequate remedy at

23   law for these wrongs and injuries.  The damage to Plaintiff includes harm to its

24   goodwill and reputation that money cannot compensate.  Plaintiff is, therefore,

25   entitled to a preliminary and permanent injunction, as set forth in 15 U.S.C. § 1117,

26   restraining and enjoining Defendants and their agents, servants, and employees, and

27   all persons acting thereunder, in concert with, or on their behalf, from engaging in

28   false advertising and from otherwise making or utilizing false and misleading

statements in connection with the promotion, advertisement or sale of Defendants' goods, services or commercial activities.

115. Plaintiff FINANCE EXPRESS seeks compensatory damages in the amount which will compensate it for all detriment caused by Defendants.

116. As an actual and proximate result of Defendants' actions, Plaintiff FINANCE EXPRESS has suffered damages in the form of lost profits. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of Dealer Desktop, and restitution and the disgorgement of Defendants' ill-gotten gains, as well as recovery of costs of this action.

117. Plaintiff FINANCE EXPRESS is informed and believes that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FIFTH CLAIM FOR RELIEF

### (Against All Defendants for False Designation of Origin and False Description—15 U.S.C. § 1125(a))

118. Plaintiff FINANCE EXPRESS realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 117 above, as though fully set forth herein.

119. Plaintiff FINANCE EXPRESS is the true and rightful owner of the valid and legally protectable registered Finance Express® service mark and trade name, registered on the Principal Register of the USPTO on December 25, 2007, Reg. No. 3,359,832 [*see* Exh. A], including but not limited to the goodwill and equity associated with the mark. The mark is, at a minimum, descriptive and has achieved secondary meaning with the relevant consuming public, which has come to recognize products and services bearing the Finance Express® mark as high quality

products and services connected with FINANCE EXPRESS.  Due to FINANCE

EXPRESS' integrity and investment of time, effort, and other resources to promote

and protect the Finance Express® mark as a symbol of excellence, the mark now

enjoys, and has long enjoyed, an exceedingly valuable goodwill and strong

secondary meaning in the market of consumers and potential consumers of

FINANCE EXPRESS' products and services, the United States, and throughout the

world, as associated with FINANCE EXPRESS

120.   Plaintiff FINANCE EXPRESS owns the rights to the valid and legally

protectable unregistered word marks, Tracker$^{TM}$ and Tracker DMS$^{TM}$, including but

not limited to the goodwill and equity associated with those marks.  The marks are,

at a minimum, descriptive and have achieved secondary meaning with the relevant

consuming public, which has come to recognize products and services bearing the

Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks as high quality products and services

connected with FINANCE EXPRESS.  Due to FINANCE EXPRESS and its

predecessors in interest's integrity and investment of time, effort, and other

resources to promote and protect the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks as

symbols of excellence, the marks now enjoy, and have long enjoyed, an exceedingly

valuable goodwill and strong secondary meaning in the market of consumers and

potential consumers of the Tracker DMS$^{TM}$ family of products and services, the

United States, and throughout the world, as associated with the Tracker DMS$^{TM}$

product and FINANCE EXPRESS.

121.   Upon information and belief, and at all times mentioned herein,

Defendants NOWCOM and RUFUS HANKEY acted under the direction and

control and as agents of Defendants HANKEY GROUP, HANKEY

INVESTMENT, and WESTLAKE, all of which acted under the direction and

control and agents of Defendant DON HANKEY.  Due to Defendants' failure to

observe corporate formalities, the actions of each Defendant complained of herein

are attributable to each other Defendant jointly and severally.

122.   Defendants' use of the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and the Finance Express® mark and trade name as domain names on the Internet constitute false designation of origin or a false description or representation that wrongfully and falsely designates the goods and services provided by Defendants on the Infringing Tracker$^{TM}$ Websites and the Infringing Finance Express® Website as originating from or connected with Plaintiff FINANCE EXPRESS and constitutes the utilization of a false description or representation in interstate commerce.

123.   By reason of the foregoing, Defendants have violated and are continuing to violate 15 U.S.C. § 1125(a).

124.   Defendants' acts complained of herein have damaged and will continue to damage Plaintiff FINANCE EXPRESS irreparably.  Plaintiff has no adequate remedy at law for these wrongs and injuries.  The damage to Plaintiff includes harm to its goodwill and reputation in the marketplace that money cannot compensate.  Plaintiff is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using, registering, or transferring the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and the Finance Express® mark and trade name, or any colorable imitation or variation thereof, as domain names on the Internet or unlawfully, unfairly, or fraudulently using such marks in connection with the promotion, advertisement, and sale of Defendants' goods or services.

125.   Plaintiff FINANCE EXPRESS seeks compensatory damages in the amount which will compensate it for all detriment caused by Defendants.

126.   As an actual and proximate result of Defendants' actions, Plaintiff FINANCE EXPRESS has suffered damages in the form of lost profits.  Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of Dealer

Desktop, and restitution and the disgorgement of Defendants' ill-gotten gains, as well as recovery of costs of this action.

127.   Defendants have willfully used the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and the Finance Express$^{®}$ mark and trade name in a manner calculated to cause confusion in the sale, offering for sale, and advertising of their products and services.  Accordingly, Plaintiff FINANCE EXPRESS is entitled to recover three times Plaintiff's damages and Defendants' profits, as well as the costs of the suit and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

## SIXTH CLAIM FOR RELIEF

**(Against All Defendants for Unfair Competition—*Cal. Bus. & Prof. Code* § 17200 and the common law)**

128.   Plaintiff FINANCE EXPRESS realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 127 above, as though fully set forth herein.

129.   Upon information and belief, and at all times mentioned herein, Defendants NOWCOM and RUFUS HANKEY acted under the direction and control and as agents of Defendants HANKEY GROUP, HANKEY INVESTMENT, and WESTLAKE, all of which acted under the direction and control and agents of Defendant DON HANKEY.  Due to Defendants' failure to observe corporate formalities, the actions of each Defendant complained of herein are attributable to each other Defendant jointly and severally.

130.   By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of Sections 17200 *et seq.* of the *California Business and Professions Code* and acts of unfair competition in violation of common law.

131.   Defendants' acts complained of herein have damaged and will continue to damage Plaintiff FINANCE EXPRESS irreparably.  Plaintiff has no adequate remedy at law for these wrongs and injuries.  The damage to Plaintiff includes harm

to its goodwill and reputation in the marketplace that money cannot compensate. Plaintiff is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using, registering, or transferring the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and the Finance Express$^{®}$ mark and trade name, or any colorable imitation or variation thereof, as domain names on the Internet or unlawfully, unfairly, or fraudulently using such marks in connection with the promotion, advertisement, and sale of Defendants' goods or services.

132.   As an actual and proximate result of Defendants' actions, Plaintiff is entitled to an accounting for profits made by Defendants on sales of Dealer Desktop and restitution of Defendants' ill-gotten gains, as well as recovery of costs of this action.

## SEVENTH CLAIM FOR RELIEF

### (Against All Defendants for False Advertising—*Cal. Bus. & Prof. Code* § 17500)

133.   Plaintiff FINANCE EXPRESS realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 132 above, as though fully set forth herein.

134.   Upon information and belief, and at all times mentioned herein, Defendants NOWCOM and RUFUS HANKEY acted under the direction and control and as agents of Defendants HANKEY GROUP, HANKEY INVESTMENT, and WESTLAKE, all of which acted under the direction and control and agents of Defendant DON HANKEY.  Due to Defendants' failure to observe corporate formalities, the actions of each Defendant complained of herein are attributable to each other Defendant jointly and severally.

135.   By reason of the foregoing, Defendants have been, and are, engaged in false advertising in violation of Sections 17500 *et seq.* of the *California Business*

*and Professions Code*, by making such untrue or misleading statements in advertisements and/or promotions.

136.   Defendants' acts complained of herein have damaged and will continue to damage Plaintiff FINANCE EXPRESS irreparably.  Plaintiff has no adequate remedy at law for these wrongs and injuries.  The damage to Plaintiff includes harm to its goodwill and reputation in the marketplace that money cannot compensate. Plaintiff is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using, registering, or transferring the Tracker™ and Tracker DMS™ marks and the Finance Express® mark and trade name, or any colorable imitation or variation thereof, as domain names on the Internet or unlawfully, unfairly, or fraudulently using such marks in connection with the promotion, advertisement, and sale of Defendants' goods or services.

137.   As an actual and proximate result of Defendants' actions, Plaintiff is entitled to an accounting for profits made by Defendants on sales of Dealer Desktop and restitution of Defendants' ill-gotten gains, as well as recovery of costs of this action.

## EIGHTH CLAIM FOR RELIEF

**(Against All Defendants for Common Law Trademark and Trade Name Infringement)**

138.   Plaintiff FINANCE EXPRESS realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 137 above, as though fully set forth herein.

139.   Plaintiff FINANCE EXPRESS is the true and rightful owner of the valid and legally protectable registered Finance Express® service mark and trade name, registered on the Principal Register of the USPTO on December 25, 2007, Reg. No. 3,359,832 [*see* Exh. A], including but not limited to the goodwill and

1    equity associated with the mark.  The mark is, at a minimum, descriptive and has

2    achieved secondary meaning with the relevant consuming public, which has come to

3    recognize products and services bearing the Finance Express® mark as high quality

4    products and services connected with FINANCE EXPRESS.  Due to FINANCE

5    EXPRESS' integrity and investment of time, effort, and other resources to promote

6    and protect the Finance Express® mark as a symbol of excellence, the mark now

7    enjoys, and has long enjoyed, an exceedingly valuable goodwill and strong

8    secondary meaning in the market of consumers and potential consumers of

9    FINANCE EXPRESS' products and services, the United States, and throughout the

10   world, as associated with FINANCE EXPRESS

11        140.   Plaintiff FINANCE EXPRESS owns the rights to the valid and legally

12   protectable unregistered word marks, Tracker$^{TM}$ and Tracker DMS$^{TM}$, including but

13   not limited to the goodwill and equity associated with those marks.  The marks are,

14   at a minimum, descriptive and have achieved secondary meaning with the relevant

15   consuming public, which has come to recognize products and services bearing the

16   Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks as high quality products and services

17   connected with FINANCE EXPRESS.  Due to FINANCE EXPRESS and its

18   predecessors in interest's integrity and investment of time, effort, and other

19   resources to promote and protect the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks as

20   symbols of excellence, the marks now enjoy, and have long enjoyed, an exceedingly

21   valuable goodwill and strong secondary meaning in the market of consumers and

22   potential consumers of the Tracker DMS$^{TM}$ family of products and services, the

23   United States, and throughout the world, as associated with the Tracker DMS$^{TM}$

24   product and FINANCE EXPRESS.

25        141.   Upon information and belief, and at all times mentioned herein,

26   Defendants NOWCOM and RUFUS HANKEY acted under the direction and

27   control and as agents of Defendants HANKEY GROUP, HANKEY

28   INVESTMENT, and WESTLAKE, all of which acted under the direction and

1    control and agents of Defendant DON HANKEY.  Due to Defendants' failure to

2    observe corporate formalities, the actions of each Defendant complained of herein

3    are attributable to each other Defendant jointly and severally.

4           142.  By reason of the foregoing, Defendants have been, and are, engaged in

5    infringing conduct in violation of Plaintiff FINANCE EXPRESS' common law

6    rights in the Tracker[TM] and Tracker DMS[TM] marks and its Finance Express® mark

7    and trade name.

8           143.  Defendants' acts complained of herein have damaged and will continue

9    to damage Plaintiff FINANCE EXPRESS irreparably.  Plaintiff has no adequate

10   remedy at law for these wrongs and injuries.  The damage to Plaintiff includes harm

11   to its goodwill and reputation in the marketplace that money cannot compensate.

12   Plaintiff is, therefore, entitled to a preliminary and permanent injunction restraining

13   and enjoining Defendants and their agents, servants, and employees, and all persons

14   acting thereunder, in concert with, or on their behalf, from using, registering, or

15   transferring the Tracker[TM] and Tracker DMS[TM] marks and the Finance Express®

16   mark and trade name, or any colorable imitation or variation thereof, as domain

17   names on the Internet or unlawfully, unfairly, or fraudulently using such marks in

18   connection with the promotion, advertisement, and sale of Defendants' goods or

19   services.

20          144.  Plaintiff FINANCE EXPRESS seeks compensatory damages in the

21   amount which will compensate it for all detriment caused by Defendants.

22          145.  As an actual and proximate result of Defendants' actions, Plaintiff

23   FINANCE EXPRESS has suffered damages in the form of lost profits.  Plaintiff is

24   further entitled to recover its damages, an accounting for profits made by

25   Defendants on sales of Dealer Desktop, and restitution and the disgorgement of

26   Defendants' ill-gotten gains, as well as recovery of costs of this action.

27          146.  Plaintiff FINANCE EXPRESS is informed and believes and thereon

28   alleges, in doing the things herein alleged, Defendants' unlawful actions were in bad

faith, in conscious disregard of Plaintiff's rights and performed with the intention of depriving Plaintiff of its rights.  Accordingly, Defendants' conduct merits, and Plaintiff seeks, an award of punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FINANCE EXPRESS prays for judgment in favor of it and against Defendants as follows:

1. That, pursuant to 15 U.S.C. §§ 1114 and 1125(a), (c), and (d); *California Business and Professions Code* §§ 17200 and 17500; and the common law; Defendants, as well as all persons acting under the direction, control, permission, or authority of Defendants, or any of them, and all persons acting in concert therewith, be enjoined during the pendency of this action, and permanently thereafter, from:

a. imitating, copying or making unauthorized use of Plaintiff's marks, including the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and the Finance Express$^{®}$ mark and trade name, as identified herein;

b. manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or service bearing any simulation, reproduction, counterfeit, copy, colorable imitation, or substantially similar likeness of Plaintiff's marks, including the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and the Finance Express$^{®}$ mark and trade name, as identified herein;

c. using any simulation, reproduction, counterfeit, substantially similar likeness, copy, or colorable imitation of Plaintiff's marks, including the Tracker$^{TM}$ and Tracker DMS$^{TM}$ marks and the Finance Express$^{®}$ mark and trade name, as identified herein, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any product or service in such fashion as to relate or connect, or tend to relate or

connect, such product in any way to Plaintiff FINANCE EXPRESS, or to any goods sold or manufactured, sponsored or approved by, or connected with FINANCE EXPRESS;

        d.     making any statement or representation whatever, or using any false designation of origin or false description, or performing any act which can, or is likely to, lead the trade or public, or individual members thereof, to believe that any product or service manufactured, distributed, promoted or sold by Defendants is in any manner associated or connected with Plaintiff FINANCE EXPRESS, or is sold, manufactured, licensed, sponsored and approved, or authorized by FINANCE EXPRESS;

        e.     engaging in any other activity constituting an infringement of Plaintiff FINANCE EXPRESS' trademarks, service marks, or FINANCE EXPRESS' rights in, or to use or to exploit, said trademarks and service marks, or constituting any dilution of FINANCE EXPRESS' trade names, reputation, or goodwill; and

        f.     assisting, aiding, or abetting any other person or business entity, or engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

    2.     That the Court order the Infringing Tracker$^{TM}$ Websites and the Infringing Finance Express® Website be transferred to Plaintiff FINANCE EXPRESS, pursuant to 15 U.S.C. § 1125(d)(1)(c), or that the registration of the aforementioned domain name be forfeited or canceled;

    3.     That Plaintiff FINANCE EXPRESS recover statutory damages of up to $100,000 per domain name in violation of 15 U.S.C. § 1125(d)(1), pursuant to 15 U.S.C. § 1117(d);

    4.     That Plaintiff FINANCE EXPRESS is entitled three times its actual damages, pursuant to 15 U.S.C. § 1117(a);

5.     That Plaintiff FINANCE EXPRESS is entitled to restitution of Defendants' profits made on sales of Dealer Desktop, pursuant to *California Business & Professions Code* §§ 17203 and 17535.

6.     That Plaintiff FINANCE EXPRESS recover compensatory damages and punitive damages in an amount sufficient to punish Defendants and to deter others, as well as reasonable attorneys' fees and the costs of this action—all according to and provided by applicable law; and

7.     That Plaintiff FINANCE EXPRESS have such other and further relief as the Court deems just and proper.

DATED:  December 28, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By    /s/    Thad A. Davis
Thad A. Davis
Attorneys for Plaintiff and
Counterdefendant FINANCE EXPRESS
LLC

PLAINTIFF FINANCE EXPRESS LLC'S FIRST AMENDED COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff FINANCE EXPRESS hereby demands a jury trial pursuant to Rule

3    38(b) of the *Federal Rules of Civil Procedure*.

4    DATED:  December 28, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
5

6                                       By    /s/    Thad A. Davis
7                                          Thad A. Davis
                                           Attorneys for Plaintiff and
8                                          Counterdefendant FINANCE EXPRESS
                                           LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28